IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL SULLIVAN-BLAKE and HORACE CLAIBORNE, on behalf of themselves and others similarly situated, | ) ) ) | 2:18-cv-01698-RJC |
| | ) | |
| Plaintiffs, | ) | Judge Robert J. Colville |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

Before the Court are several Motions related to discovery in the above-captioned matter. Plaintiffs Angel Sullivan-Blake ("Sullivan-Blake") and Horace Claiborne ("Claiborne"), on behalf of themselves and other similarly situated individuals, (collectively, "Plaintiffs") and Defendant FedEx Ground Package System, Inc. ("FedEx") have each filed a Motion and/or a Brief/Memorandum (ECF Nos. 190; 191) setting forth their respective positions with regard to the appropriate scope of representative discovery in this conditionally certified Fair Labor Standards Act ("FLSA") collective action. In addition, FedEx has filed three discovery Motions (ECF Nos. 217; 220; 222), and Plaintiffs have filed a Motion to Compel (ECF No. 248), each of which is currently pending and at issue in this Memorandum Opinion.[1] The Court has jurisdiction in this

---

[1] By the Court's count, the parties have filed approximately thirty (30) materially relevant docket entries with respect to the pending discovery Motions, with such docket entries consisting of over 700 pages of motions, briefing, exhibits, status reports, notices, proposed orders, and transcripts. These totals do not include the relevant submissions related to Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 235), or the three Motions to Intervene (ECF Nos. 224; 266; 283) that have been filed in this matter, all of which will be addressed separately. The Court does not cite the number of motions, and the voluminous nature of the same, that have been filed in this case to either unfairly

matter pursuant to 28 U.S.C. § 1331.  The Motions at issue have been (more than) fully briefed, and are ripe for disposition.

## I.    Factual Background & Procedural History

This Court set forth the relevant factual background, and some of the relevant procedural history, of this case in its May 21, 2020 Opinion (ECF No. 156) denying FedEx's Motion to Disqualify Plaintiffs' Counsel (ECF No. 139), and will borrow from the same for purposes of the present Memorandum Opinion.  Plaintiffs assert that they were employed by FedEx through intermediary employers[2] to perform delivery services on FedEx's behalf.  Compl. 1, ECF No. 1. Plaintiffs further assert that FedEx has violated the FLSA by not paying overtime compensation to Plaintiffs for all hours worked over forty each week.  *Id*.

This case was reassigned from the Honorable Patricia L. Dodge to the undersigned on February 4, 2020.  Order, ECF No. 137.  In her September 30, 2019 Memorandum Opinion (ECF No. 106) granting Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the FLSA, Judge Dodge set forth the following comprehensive factual background for this case:

### A.    FedEx Operations and Business Model

FedEx, a Delaware Corporation with its principal place of business in Coraopolis, Pennsylvania, operates a nationwide package pickup and delivery business.  (ECF No. 1 ¶¶ 4, 7).  FedEx contracts with thousands of small businesses

admonish counsel, much less elicit sympathy; but, rather, does so to illustrate the complexity and breadth of the issues presently before the Court, and to remind the parties that any delay with respect to a decision on any single motion has resulted from the parties' zealous, and at times perhaps overzealous, briefing in this matter.  While the Court respects all of the parties' seeming indefatigability, the Court summarily rejects FedEx's assertion that it is only Plaintiffs' actions that have resulted in what FedEx observes to be the "current glacial pace" of this case.  *See* Reply 7, ECF No. 245 (setting forth FedEx's assertion regarding the "glacial pace" of this action in a 172-page Reply to a discovery motion); *see also* Motions to Intervene (ECF Nos. 224; 266; 283) (each asserting that the Motions were filed as a result of a letter, sent by FedEx to the potential intervenors, who are Service Providers, in January of this year, encouraging the potential intervenors to file motions to intervene in this lawsuit).

[2] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf, and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record.  The distinction between ISPs and CSPs is not relevant to this Court's consideration of the Motions at issue in this Memorandum Opinion.  For ease of reference, this Court will refer to ISPs and CSPs collectively as "Service Providers," and any reference to "ISPs" or "CSPs" in language quoted by this Court in this Memorandum Opinion may be inferred to be a reference to Service Providers generally.

whose employees carry out the physical pickup and delivery of packages. (ECF No. 29 at 1). Since long before 2014, FedEx has contracted only with incorporated businesses for delivery services, and does not employ any drivers for such services. (ECF No. 29-2 ¶ 10). FedEx's Form 10-K for the fiscal year ending May 31, 2016 "10K") reflects that FedEx "is involved in numerous lawsuits . . . where the classification of its independent contractors is at issue." (ECF No. 11-3 at 3). These lawsuits involve a contractor model which FedEx has not operated since 2011. (*Id.*).

### B.    The ISP Model

In 2010, FedEx began transitioning into a new negotiated agreement under which FedEx's contractors are known as Independent Service Providers ("ISPs"). (ECF No. 29 at 1). According to its 10-K, FedEx expects transition to the ISP model to be completed nationwide by 2020. (ECF No. 11-3 at 3). Under this model, FedEx contracts with ISPs, i.e., independent corporations with vehicles, drivers, and other employed personnel, that provide pickup and delivery services for FedEx. (ECF No. 29-2 ¶¶ 4, 5). According to FedEx, the ISPs:

1)    Ensure that all of their drivers are treated as employees of the ISP (*id.* ¶ 14);

2)    Agree to comply with all federal, state, and local employment laws (*id.*);

3)    Retain "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, compensation, benefits, and all other terms and conditions of employment" of their employees. (*Id.* ¶ 15).

### C.    Plaintiffs' Allegations

According to the Complaint, Plaintiff Sullivan-Blake is a resident of Texas and worked as a delivery driver for FedEx through an ISP from approximately November 2015 through October 2018. (ECF No. 1 ¶ 3). Plaintiff Claiborne resides in North Carolina and has worked as a delivery driver for FedEx through ISPs since approximately 2011. (*Id.* ¶ 4). Both Plaintiffs allege that they were eligible for overtime compensation under the FLSA but did not receive it. (*Id.* ¶¶ 3, 4).

Plaintiffs have included their affidavits in support of the Motion. In her affidavit, Plaintiff Sullivan-Blake avers that she has worked full-time as a delivery driver out of three different FedEx terminals, all located in Texas, primarily using a van that was under 10,000 pounds. (ECF No. 11-1 ¶¶ 3-5). When she first started working for FedEx in November of 2015, FedEx paid her by the hour and she received overtime when she worked over forty hours a week (*Id.* ¶ 7). At the time,

she was told by a FedEx manager that she was being paid by FedEx and that ISPs do not pay drivers by the hour. (*Id.* ¶ 9). Starting sometime in January of 2016, however, FedEx required her to be paid by an ISP. (*Id.* ¶ 7). Plaintiff Sullivan-Blake claims that in order to keep her job she was required to be paid through an ISP that compensated her at a flat daily rate regardless of how many hours she worked, even though she frequently worked more than forty hours a week. (*Id.*). She also asserts that after she started to be paid by an ISP for her FedEx delivery work, she continued reporting to work each morning and delivering packages for FedEx following the same mandatory delivery procedures established by FedEx and that nothing about her job changed. (*Id.* ¶ 13).

Plaintiff Claiborne's affidavit reflects that he too has worked as a full-time delivery driver out of three different FedEx terminals, one located in Virginia and the other two in North Carolina, using trucks that weighed less than 10,001 pounds. (ECF No. 11-2 ¶¶ 2, 11, 13). During his work at all three terminals, he has been paid through an ISP. (*Id.* ¶¶ 2, 14). Plaintiff Claiborne alleges that he has never been paid any overtime even though he has regularly worked more than 40 hours each week during his employment. (*Id.* ¶ 17).

Based on their personal observations, Plaintiffs aver that all of the delivery drivers who worked alongside them were required to work under various ISPs. (ECF Nos. 11-1 ¶ 8; 11-2 ¶ 6, 18). According to their affidavits, all of the delivery drivers to whom Plaintiffs spoke told them that they do not get paid overtime for their work. (ECF Nos. 11-1 ¶ 11, 12, 26; 11-2 ¶ 19). Plaintiffs also allege that despite working for different ISPs, delivery drivers, including themselves, wore the same FedEx uniform, drove delivery vehicles with FedEx logos, and used special FedEx scanners for tracking packages. (ECF Nos. 11-1 ¶¶ 15, 16, 20; 11-2 ¶¶ 7, 8). In her affidavit, Plaintiff Sullivan-Blake notes that each morning when she reported to work, package handlers employed by FedEx had already separated the packages that each delivery driver was assigned to deliver that day. (ECF Nos. 11-1 ¶ 18). If a package assigned to a delivery driver was missing, that driver would have to wait for a FedEx manager to either track the missing package, or give permission to leave without the missing package. (*Id.* ¶¶ 20, 21).

Plaintiffs assert that customer comments or complaints about their work were directed to FedEx, as opposed to their ISPs. (ECF Nos. 11-1 ¶ 24; 11-2 ¶ 10). Plaintiffs' affidavits also reflect that during their time as drivers, they never delivered packages for another company as they did not have time to do so. (ECF Nos. 11-1 ¶ 17; 11-2 ¶ 16). In any event, they could not carry packages for anyone other than FedEx while on their FedEx delivery routes. (ECF No. 11-1 ¶ 17).

Sept. 30, 2019 Mem. Op. 2-4, ECF No. 106 (footnote omitted).

On October 8, 2019, Judge Dodge entered an Order conditionally certifying the following

nationwide (excluding Massachusetts) collective:

All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) or a contracted service provider (CSP) since November 27, 2015, who operated a vehicle weighing less than 10,001 pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week.

Order, ECF No. 109.

On January 31, 2020, Judge Dodge entered a Memorandum Opinion (ECF No. 133) and Order (ECF No. 134) denying FedEx's "Rule 19(a) Motion to Join Pennsylvania Service Providers as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties" (ECF No. 114). In its Rule 19 Motion, FedEx sought joinder of Pennsylvania Servicer Providers to this action, as well as dismissal of all claims pertaining to opt-in Plaintiffs residing outside of Pennsylvania and Service Providers who employed drivers outside of Pennsylvania. Jan. 31, 2020 Mem. Op. 1, ECF No. 133. FedEx argued that Service Providers are necessary and indispensable parties in this case because they employ and pay Plaintiff drivers, set the employment and wage policies for drivers, and have a direct interest in the outcome of the case. *Id.* at 2. Judge Dodge rejected this argument, and held that Service Providers are not required parties under Fed. R. Civ. P. 19(a) because: 1) "The Court can accord complete relief among existing parties"; 2) "Service Providers do not have a direct stake in this litigation"; and 3) "[t]he absence of Service Providers would not subject FedEx to inconsistent obligations." Jan. 31, 2020 Mem. Op. 3-5, ECF No. 133.

On May 21, 2020, this Court denied FedEx's Motion to Disqualify, which sought disqualification of Plaintiffs' counsel, Lichten & Liss-Riordan, P.C., on the basis that the firm's representation of both Plaintiffs and a class of Service Providers in *Carrow v. FedEx Ground Package System, Inc.*, No. 16-3026 (D.N.J.) purportedly created a concurrent conflict of interest under Pennsylvania Rule of Professional Conduct 1.7. Mem. Op. 5, ECF No. 156. The Court's Order (ECF No. 157) denying FedEx's Motion to Disqualify also approved Plaintiffs' Proposed

Notice, Reminder Notice, and Opt-In Form (ECF No. 112) without modification. Notice was issued on June 16, 2020. ECF No. 170.

Following an April 2, 2020 Status Conference, the parties reached an agreement respecting written discovery as to FedEx and the initial 57 opt-in Plaintiffs. *See* ECF No. 151. This Court then entered a Case Management Order (ECF No. 152) on April 10, 2020 setting forth deadlines for such discovery, and further directing the parties to file a joint status report respecting the status of discovery by August 14, 2020. On August 14, 2020, the parties filed their Joint Status Report (ECF No. 170) pursuant to this Court's April 10, 2020 Order. The Status Report advised the Court that: (1) discovery as to the initial 57 opt-in Plaintiffs was proceeding on schedule; (2) due to the volume of opt-in forms received and logistical issues, the parties would not know the identities of all opt-ins until September 8, 2020; and (3) the parties intended to confer regarding the scope of representative discovery and would submit their positions on the same by October 23, 2020. ECF No. 170. The parties sought three extensions of the deadline for their submissions respecting representative discovery, *see* ECF Nos. 185; 186; 187, and eventually filed such submissions on December 4, 2020. Plaintiffs and FedEx each filed a Response (ECF Nos. 193; 194) to the other's submission on December 18, 2020. At the parties' request, the Court heard oral argument as to the scope of representative discovery on January 27, 2021.[3] FedEx filed an unsolicited Supplemental Notice (ECF No. 209) on March 5, 2021, and Plaintiffs filed a Response and Request to Strike (ECF No. 210) FedEx's Supplemental Notice on March 8, 2021.

Upon notice and request of the parties, the Court scheduled a status conference for February 24, 2021 to discuss issues that had arisen in the initial waive of written discovery in this matter, specifically respecting discovery requests that had been served upon the named Plaintiffs and

---

[3] The Transcript of this oral argument is filed on the docket at ECF No. 203.

initial opt-in Plaintiffs who had joined before Notice issued in this matter. The parties filed a "Joint Summary of Scope and Nature of Discovery Disputes" (ECF No. 206) on February 22, 2021, and the Court convened the status conference on February 24, 2021. The Court directed the parties to confer in an attempt to resolve the issues discussed during the February 24, 2021 status conference, and to file another joint status report, as well as proposed orders, advising the Court as to the issues upon which the parties agreed. *See* ECF No. 208. The parties subsequently submitted three agreed-upon proposed orders of court requiring the production of evidence from the named Plaintiffs and the initial opt-in Plaintiffs who had not yet sufficiently responded to discovery requests, and the Court entered Orders of Court (ECF Nos. 212; 213; 214) consistent with the same on March 10, 2021. While the parties reached agreement as to orders requiring the production of such evidence, the parties failed to reach agreement as to the impact of any party's failure to produce discovery consistent with the Court's Orders. *See* ECF No. 211. Those disagreements are the subject of the three discovery Motions filed by FedEx, and will be addressed below.

While the parties' submissions respecting the scope of representative discovery and FedEx's discovery Motions were pending, the parties filed another "Joint Summary of Scope and Nature of Discovery Disputes" (ECF No. 232) on April 12, 2021, this time advising the Court that the parties could not reach agreement with respect to discovery requests that had been served upon FedEx by Plaintiffs. The Court did not schedule another status conference at that time, and instead entered an Order granting Plaintiffs leave to file a motion addressing the same by April 27, 2021. ECF No. 234. Consistent with the Court's Order, Plaintiffs filed their Motion to Compel the Production of Witnesses for Deposition and Documents on April 27, 2021, and the Motion was fully briefed as of May 14, 2021.

II.     **Legal Standards**

A.  **The FLSA "Two-Step Certification Process"**

Because conditional certification and final certification under the FLSA, and the factors that courts consider in determining whether the same are appropriate, are relevant to the Court's consideration of the parties' submissions respecting the scope of representative discovery, the Court begins by setting forth the legal standard for conditional and final certification under the FLSA.  Section 216(b) of the FLSA permits employees to bring a collective action on behalf of themselves and other "similarly situated" employees against an employer for violation of the FLSA.  29 U.S.C. § 216(b).  A collective action depends on the participation of opt-in plaintiffs, and a court must "decide whether those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).  Being similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012).  In the Third Circuit, courts utilize a "two-step certification process" in determining whether plaintiffs are "similarly situated." *Halle*, 842 F.3d at 224.

Conditional certification, the first step in the two-step process, "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536 n.4).  "In other words, Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D.

Pa. 2014). "Articulating the differences [between the] two stages of the collective action certification analysis, the Third Circuit has explained that the initial step of conditional certification asks whether similarly situated plaintiffs do, in fact, exist; by contrast, the second stage asks whether the specific plaintiffs who have opted-in are, in fact, similarly situated to the named plaintiffs." *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078, at *5 (W.D. Pa. Oct. 26, 2016) (citing *Zavala*, 691 F.3d at 536 n.4). "Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (quoting *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)). Given the "modest burden" at the conditional certification stage, "motions for conditional certification are generally successful." *Id*.

"The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members," *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)), and the Third Circuit has explained that "[c]onditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process," *id.* (citing *Zavala*, 691 F.3d at 536). In *Halle*, the Third Circuit further explained:

> While conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action. [*Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)]. Nevertheless, "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23." *Genesis Healthcare*, 133 S.Ct. at 1532.

*Id*.

At the final certification stage, the second step in the two-step process, the burden is on the plaintiffs to establish by a preponderance of the evidence that they satisfy the similarly situated requirement. *Zavala*, 691 F.3d at 537. "Following the notice and discovery period, the defendant typically moves the Court to 'decertify' the collective action on the ground that the opt-in plaintiffs are not similarly situated." *Goodman v. Burlington Coat Factory*, No. CIV.A. 11-4395 JHR, 2012 WL 5944000, at *3 (D.N.J. Nov. 20, 2012); *see also Halle*, 842 F.3d at 226 ("Upon conclusion of discovery, the parties will file motions seeking final certification or decertification of the collective action."). "After discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). In determining whether plaintiffs are similarly situated at the final certification stage, courts in the Third Circuit utilize an "ad-hoc approach, which considers all the relevant factors and makes a factual determination on a case-by-case basis." *Zavala*, 691 F.3d at 536. The United States Court of Appeals for the Third Circuit has explained:

> Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* at 536–37; *see also Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV.A. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011) ("[D]etermining whether class members are similarly situated at the decertification stage generally requires consideration of three factors: (1)

the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations.").

 With respect to assessing joint employer status, the United States Court of Appeals for the Third Circuit has explained:

> When assessing whether a "joint employer" relationship exists, a court should consider the following non-exhaustive list of relevant factors:
>
>> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.
>
> [*In re Enterprise Rent–A–Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012)].  As with the existence of an employer-employee relationship in the first instance, however, the determination depends on "all the facts in the particular case."  29 C.F.R. § 791.2(a).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014).  Courts address the issue of whether a joint employer relationship exists at the final certification/decertification stage. *See Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352-53 (W.D. Pa. 2018) ("Even, 'where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination.'" (quoting *Manning v. Goldbelt Falcon, LLC*, 2010 WL 3906735, at *3 (D.N.J. Sept. 29, 2010))).

### B.  Sanctions Under Fed. R. Civ. P. 37

 Federal Rule of Civil Procedure 37(b)(2) describes the sanctions that may be imposed for a party's failure to obey a discovery order, and provides:

 (2) Sanctions Sought in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  With respect to monetary sanctions, Rule 37(b)(2)(C) provides:

> Payment of Expenses.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

### C.  Discovery Under Fed. R. Civ. P. 26

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

## III.    Discussion

As detailed above, the Court has before it a number of discovery Motions filed by the parties in this matter. The Court shall address these motions in the order in which they were filed, beginning with the parties' cross-filings setting forth their respective positions with regard to the scope of representative discovery.[4]

### A.  Representative Discovery (ECF Nos. 190 and 191)

The issue presented by the parties' submissions respecting the scope of representative discovery in this matter is the appropriate number/percentage of opt-in Plaintiffs that should be subject to written discovery in anticipation of the final certification/decertification stage.[5] While the parties agree that representative discovery is appropriate given the size of this collective action, they differ greatly in their proposals for the scope of such representative discovery. Not surprisingly, Plaintiffs believe that a relatively low number of such opt-ins should participate in

---

[4] The Court notes that the parties' briefing in this case often takes time to express incredulity and disbelief at arguments set forth in the opposing party's briefing. While the Court recognizes the adversarial nature of the litigation process generally, the Court would note that facts, applicable law, and analysis and argument respecting the same, and not the parties' apparent personal disappointment with the purported behavior, arguments, and strategy of the other party, are what the Court will consider in reaching a decision on the ten pending Motions in this case. The Court respectfully requests that both parties save their own time and resources (as well as the Court's), and refrain from hyperbole and incredulity when responding to the arguments and positions of the opposing party going forward. The same is neither helpful nor material to the Court's consideration of the legal issues before it.

[5] With respect to the nature of this written discovery, the parties have agreed to utilize a written questionnaire that the parties have already served upon the initial 57 opt-in Plaintiffs. Pls.' Br. 2 n.2, ECF No. 190. The parties have agreed that, following the conclusion of written discovery, they will confer with respect to the number of depositions that will take place in this matter in an attempt to reach an agreement before presenting that issue to the Court. *Id.*

representative discovery, and specifically propose that 500 total opt-ins, or about 1.7% of the approximately 30,000 individuals who have opted in to this action, should, at least initially, participate in representative discovery. *See* Pls.' Br. 2, ECF No. 190. FedEx proposes that it should be permitted to submit questionnaires to a substantially larger percentage of opt-ins, specifically requesting that FedEx be permitted to: (1) submit questionnaires to five opt-ins each from 360 of the Service Providers; and (2) submit a questionnaire to one opt-in each from the approximately 5,440 remaining Service Providers. Def.'s Br. 2, ECF No. 191.[6]

Plaintiffs further propose that, once the Court has set the number of opt-ins who will be subject to representative written discovery, each party be permitted to select half of the opt-ins who will receive a questionnaire. Pls.' Br. 3, ECF No. 190. FedEx asserts that it should be permitted to select all of the opt-ins that will receive the questionnaire once the Court has determined the appropriate scope of representative discovery. Tr. 25:13-21, ECF No. 203.

The case law cited by the parties in this matter, and this Court's independent research, indicates that there is no bright-line standard for the number or percentage of opt-ins that should be subject to representative discovery in an FLSA collective action. The scope of discovery permitted by courts in the cases cited by the parties ranges from a low of 1.7% to a high of 100%,[7] with the scope of discovery permitted in the cases cited by the parties otherwise ranging from approximately 4%-8%. Generally speaking, the Court notes that neither Plaintiffs' suggestion of

---

[6] By the Court's math, this proposal would provide for service of the questionnaire on a total of 7,240 opt-ins, i.e. about 24.1% of the approximately 30,000 total opt-ins. FedEx proposes that representative discovery proceed in tiers, or stages, to address differences between Service Providers and differences between opt-ins associated with the same Service Provider, *see* FedEx's Br. 5-6, ECF No. 191, and explains that the percentage of total opt-ins who are subject to discovery could be closer to 11.2% or 14.5% (3,374 opt-ins or 4,340 opt-ins, respectively) if the first opt-ins that are sampled are associated with multiple, distinct Service Providers. *See id.* at 6 n. 5.

[7] These low and high percentages occurred, respectively, in a case where there was agreement of the parties as to the scope of representative discovery, *see* Pls.' Br. 6, ECF No. 190, and in a significantly smaller collective action, *see* Def.'s Br. 7, ECF No. 191. Accordingly, neither provides material guidance with respect to the Court's consideration of the parties' competing proposals in this comparatively large and complex collective action.

1.7% nor FedEx's proposal of either 11.2%, 14.5%, or 24.1% finds much, if any, support in the case law cited by either party, at least with respect to collective actions of this size and nature.

District courts within the Third Circuit "have routinely limited discovery to a representative sample of opt-in plaintiffs in FLSA actions." *Scott v. Bimbo Bakeries USA, Inc.*, No. CIV.A. 10-3154, 2012 WL 6151734, at *4 (E.D. Pa. Dec. 11, 2012). In allowing interrogatories to be served upon no more than 10% of the 650 opt-in plaintiffs in *Scott*, the United States District Court for the Eastern District of Pennsylvania explained: "[w]ritten discovery propounded upon a representative sampling of opt-in Plaintiffs appropriately balances the needs of Defendants and also takes into account the burden to Plaintiffs and their counsel, a factor that seems to be ignored by Defendants." *Scott*, 2012 WL 6151734, at *6. In *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2011 WL 9686065 (M.D. Pa. Feb. 7, 2011), the United States District Court for the Middle District of Pennsylvania rejected the *Craig* defendants' proposed representative discovery plan, which would have required all 1,073 opt-ins to respond to written discovery, because the same would prove "unduly burdensome, unnecessary, and likely to undermine the interests of efficiency and fairness in this particular case," and instead allowed such discovery to proceed as to approximately 4.7% of the opt-ins. *Craig*, 2011 WL 9686065, at *4; *but see Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013) ("Plaintiffs can hardly be heard to complain about the cost, burden and difficulties associated with defendants' discovery when they chose to pursue an extensive class. Plaintiffs knew 'what they were in for' when they filed the case."). The *Craig* court further rejected the defendants' proposal for deriving a "statistically significant sampling" in that case. *Craig*, 2011 WL 9686065, at *4.

In *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740(AT)(GWG), 2016 WL 3221146 (S.D.N.Y. June 7, 2016), a case which both parties discuss, the United States District for the

Southern District of New York allowed for written discovery on 8% of a collective of 4,506 individuals, and balanced the burden imposed by such discovery with the fact that the collective spanned several states in a case where the *Flood* defendants had also argued that the collective included "individuals who held a range of positions that were subject to the diverse employment policies of different managers, possibly rendering inappropriate the aggregation of Plaintiffs' claims." *Flood*, 2016 WL 3221146, at *6; *see also id.* (refusing to address the merits of the *Flood* defendants' contention respecting final certification at the representative discovery stage, but holding that the defendants "must at least be afforded the opportunity to defend it.").  In *O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 WL 1388660 (N.D. Ill. Apr. 10, 2014), the United States District Court for the Northern District of Illinois explained that there is "no universally accepted method for handling discovery in cases like this," *O'Toole*, 2014 WL 1388660, at *2, and permitted written discovery on 33% of a collective of more than 700 individuals, explaining:

> And so, with neither party's position being particularly compelling, the idea will be to effect a balance between burden and access to information.  As such, written discovery shall be limited to 33% of the opt-ins.  This will strike a balance between allowing the defendants a large enough sampling of the class to be meaningful and limiting the workload on plaintiffs' counsel.  As for the selection of the opt-ins, the plaintiffs offer no reason why they should be involved in the selection process at all, and reasons readily come to mind why they should have no role to play in that process.

*Id.* at *3.

With respect to the instant matter, the Court initially notes that Plaintiffs seemingly suggest that the only issue relevant to final certification in this case is the joint employer inquiry, and that the Court will not be required to address, and that FedEx is not entitled to representative discovery as to, any other issue leading up to a determination on final certification.  *See generally* Pls.' Resp., ECF No. 193; *see also* Pls.' Br. 11-12, ECF No. 190.  While the Court recognizes that the joint employer issue is one issue that will be addressed at the final certification stage in this case, it is

not the only issue that will be before the Court at that time. Rather, at the final certification stage, Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that the members of the collective are, in fact, similarly situated to the named Plaintiffs. *Zavala*, 691 F.3d at 537. In making a determination as to whether plaintiffs are similarly situated at the final certification stage, courts in the Third Circuit utilize an "ad-hoc approach," which considers all relevant factors, including, but not limited to:

> [W]hether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* at 536–37; *see also Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV.A. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011) (holding that the similarly situated inquiry involves consideration of: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations."); *Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019) ("To be found similarly situated, members of the collective need not have an identical experience; 'complete symmetry of job functions is not required for final certification under the FLSA.'" (quoting *Rivet v. Office Depot, Inc.*, 207 F. Supp.3d 417, 426 (D.N.J. 2016))).

The Court further notes that Judge Dodge's September 30, 2019 Memorandum Opinion, which addressed conditional certification, anticipated and held that the issue of whether each of the opt-ins is in fact similarly situated to the named Plaintiffs would be litigated at the final certification stage. *See* Sept. 30, 2019 Mem. Op. 8, ECF No. 106 ("However, these contentions focus either on merits the of Plaintiffs' claims, or on whether the potential opt-ins are in fact similarly situated to Plaintiffs. This is an inquiry that will be undertaken at step two of the

certification process with a more developed record"). Again, while the Court acknowledges that the joint employer issue will be considered at the time of final certification, the Court disagrees with Plaintiffs' suggestion that it will be the only issue before the Court at that time.[8]

Ultimately, with respect to the appropriate scope of representative written discovery in this matter, the Court finds, consistent with the case law discussed above, that the appropriate scope of representative discovery is, at least initially, somewhere between the very low amount proposed by Plaintiffs and the very high suggestion set forth by FedEx. Initially, as the parties agree, the size of this case necessitates the use of representative discovery. Further, the scope of such representative discovery should be reasonable, balancing the burden of such discovery on Plaintiffs and the needs of FedEx, and specifically the amount of discovery FedEx believes it requires to argue against final certification.

With respect to the burden on Plaintiffs, the Court notes that the parties have already agreed on the form of written discovery, specifically a written questionnaire that the parties have previously served on the initial 57 opt-ins. FedEx's proposal of serving questionnaires, which also require document production, on somewhere between 3,374 and 7,240 opt-ins, however, would very likely prove considerably unwieldy and burdensome. The Court further notes that this case is an exceptionally large and complex nationwide collective action, as has been made abundantly

---

[8] The Court further notes that Plaintiffs, somewhat confusingly, suggest that the issue of whether the opt-ins were paid overtime relates only to damages, and that the same is completely divorced from, and unrelated to, liability in this matter. *See* Pls. Resp. 6 n.8, ECF No. 193 ("While FedEx argues that it needs discovery from thousands of opt-ins in order to evaluate whether or not they received overtime pay, the issue of payment of overtime is a *damages* question; if FedEx is not deemed to be the drivers' joint employer, then whether or not the drivers were paid overtime will be moot. There is no need for intensive discovery of the potential damages of each driver at this phase in the case."). Being similarly situated "means that one is subjected to some common employer practice that, if proved, *would help demonstrate a violation of the FLSA*." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) (emphasis added). As has been noted by both Judge Dodge and the undersigned in this matter, Plaintiffs assert that FedEx *has violated the FLSA in this case by not paying overtime compensation* to Plaintiffs for all hours worked over forty each week. Compl. 1, ECF No. 1. While damages and *the extent* of overtime paid and/or owed may be premature, the Court finds that Plaintiffs' blanket assertion respecting the purported irrelevance of overtime generally is overstated, and the Court has thus addressed the same in this footnote.

clear in the parties' briefing, the Court's recitation of the factual background and procedural history of this case, and the extensive motion practice that has already taken place to date. Accordingly, the Court finds that Plaintiffs' suggestion of allowing written discovery on only 500 opt-ins, or 1.7%, is simply not supported by the needs of this complex case, especially where Plaintiffs propose that they be permitted to select half of the opt-ins who will be subject to such representative discovery. In summary, Plaintiffs' proposal for representative discovery is lower than that permitted by any court in the cases upon which Plaintiffs rely, at least where the scope of representative discovery was contested, and is not supported by the needs of the case. Likewise, FedEx's proposed opt-in samples are significantly higher than that permitted by any court in the cases cited by FedEx, at least where representative discovery was found to be appropriate, and this unprecedented representative discovery request would prove burdensome and unwieldy.

Taking into consideration all of the above, the Court will enter an Order allowing for representative written discovery as to 1,650 opt-ins, i.e. 5.5% of the approximately 30,000 opt-ins. Each of these individuals shall be selected by FedEx, as the Court finds that Plaintiffs advance no material argument as to why Plaintiffs should be involved in the selection process. *See O'Toole*, 2014 WL 1388660, at *3. The scope of representative discovery may be revisited, if warranted and appropriate, as representative discovery proceeds in this matter.[9]

---

[9] The Court notes, however, that it is contemporaneously entering a Memorandum Order granting Plaintiffs' Motion for Leave to File Amended Complaint. Because Plaintiffs' proposed amended complaint does not remove the FLSA claim that is asserted in the original Complaint, the Court perceives, at this juncture, no basis on which it would revisit its decision respecting the appropriate scope of representative discovery simply on the basis of the filing of the amended complaint. This is especially true where no party asked the Court to refrain from deciding the pending issue of the appropriate scope of representative discovery at any point, including on the docket or during oral argument on the representative discovery issue. The Court further notes that neither Plaintiffs' briefing respecting representative discovery nor its Motion for Leave to File Amended Complaint sets forth any basis on which this Court would find that its holding as to the appropriate scope of representative discovery is in any way incorrect, or that it is appropriate to revisit its decision on the appropriate scope of representative discovery merely because the Motion for Leave to File Amended Complaint has been granted.

**B.  FedEx's Motion to Dismiss Named Plaintiff Angel Sullivan-Blake with Prejudice and to Strike Her Affidavit (ECF No. 217)**

FedEx asserts that it served Sullivan-Blake with interrogatories and requests for production in October of 2019, and further asserts that, to date, Sullivan-Blake has not responded to such discovery requests despite this Court entering an Order (ECF No. 214) on March 10, 2021 requiring her to respond to the outstanding discovery requests by March 24, 2021.  Mot 1, ECF No. 217.  FedEx moves, pursuant to Fed. R. Civ. P. 37(b)(2)(A), for an order dismissing Sullivan-Blake from this action with prejudice, and further requests that the Court strike Sullivan-Blake's Affidavit (ECF No. 11-1) filed in support of conditional collective certification.  *Id.*  FedEx also requests, pursuant to Rule 37(b)(2)(C), an award of reasonable expenses caused by Sullivan-Blake's failure to comply with the Court's Order compelling her to respond to discovery, including attorneys' fees.  *Id.*  FedEx asserts, Br. in Supp. 2, ECF No. 218, and Plaintiffs concede, Br. in Opp'n 2-3, ECF No. 236, that Plaintiffs' counsel has been unable to contact Sullivan-Blake and that she has not responded to counsel's repeated attempts to reach her.  Plaintiffs do not oppose dismissal, without prejudice, of Sullivan-Blake as a named Plaintiff, but argue that she should be permitted to remain in the collective action as an absent opt-in Plaintiff.  Br. in Opp'n 2-3, ECF No. 236.  Plaintiffs further argue that there is no basis for her dismissal from this action with prejudice, and that there is no reason to strike her Affidavit.  *Id.*

Dismissal with prejudice is a drastic, "extreme" sanction, and courts consider several factors in deciding whether the same is appropriate.  *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984).  The United States Court of Appeals for the Third Circuit has explained:

> Ordinarily, when a court is determining sua sponte or upon motion of a defendant whether to dismiss because of a plaintiff's failure to prosecute, and the plaintiff is

opposing the motion, the court must consider several factors in reaching its decision: (1) the extent of the party's personal responsibility; (2) the prejudice to the opponent; (3) any history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) whether effective alternative sanctions are available; and (6) the meritoriousness of the claim or the defense.

*Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir. 1994) (citing *Poulis*, 747 F.2d at 868).

In the present case, the Court is constrained to conclude that dismissal of Sullivan-Blake with prejudice is an appropriate sanction for Sullivan-Blake's failure to materially participate in this litigation. The Court agrees generally with the analysis set forth in *Ludwig v. Speedway LLC*, No. CV 20-0824, 2021 WL 2223833, (E.D. Pa. June 2, 2021), wherein the United States District Court for the Eastern District of Pennsylvania determined that dismissal, albeit without prejudice, of two named plaintiffs was appropriate where those individuals failed to respond to discovery requests, failed to appear for depositions, and failed to respond to their counsel's repeated attempts to contact them for a period of six months. *Ludwig*, 2021 WL 2223833, at *3.

In this case, Sullivan-Blake has not participated in discovery, has disregarded a Court Order directing her to respond to discovery requests, and has not responded to or been in contact with Plaintiffs' counsel despite counsel's attempts to contact her. Accordingly, the Court is left to conclude that Sullivan-Blake is responsible for her failure to participate in this action. As the *Ludwig* court held, "with the passage of time, Defendant is prejudiced insofar as facts . . . become harder to establish, and litigation costs continued to be incurred." *Id.* at *3. With respect to a history of dilatoriness, while it is unclear exactly how long Sullivan-Blake has been unreachable, it is clear that such a period predated the February 24, 2021 status conference in this matter, and FedEx asserts that Plaintiffs' counsel was unable to reach Sullivan-Blake for months before that. *See* Joint Summary 2, ECF No. 206. Accordingly, it has been at least five months, and likely much longer, since Sullivan-Blake has participated in this litigation, and she has not responded to

discovery requests that were served on her in October of 2019.  Further, Sullivan-Blake's conduct can be considered willful in the sense that she brought the instant lawsuit, and has seemingly abandoned it.[10]  *See Ludwig*, 2021 WL 2223833, at *3 ("Fourth, they have acted willfully in the sense that they are the parties in control of this lawsuit.  They are the parties who brought the case and for all practical purposes abandoned it.").  As discussed below, the Court does not believe that a monetary sanction is appropriate with respect to Sullivan-Blake, and further finds that the same would not be effective given her recent failure to participate in any meaningful way in this litigation.  *See also id.* ("[A]ttorneys' fees and cost are neither appropriate nor likely to be effective in a case involving comparatively low wage employees serving in a representative capacity.").  Finally, while there is not a sufficient basis on which this Court could determine the ultimate meritoriousness of this action at this time, the Court notes that the action will continue as to named Plaintiff Claiborne and the approximately 30,000 opt-in Plaintiffs.  *See id*.

In dismissing the named plaintiffs who had failed to participate or respond to discovery relevant to conditional certification, the *Ludwig* court ultimately held:

> The dismissal is without prejudice, because I recognize that serving as a class representative can be intimidating to some plaintiffs, and because it is hard to determine the degree to which challenges presented by the pandemic might have played some role.  If this action is successful, and Ms. Ludwig and Carrasquillo are eligible to participate, total dismissal of their claims is too harsh a sanction.

*Ludwig*, 2021 WL 2223833, at *4.  *Ludwig* is materially distinguishable from the instant matter in that the discovery at issue in *Ludwig* was discovery relevant to the question of conditional certification, and the *Ludwig* court had not yet addressed conditional certification when it dismissed the named plaintiffs without prejudice.  In this case, significant motion practice has

---

[10] The Court also notes that it informed counsel during the February 24, 2021 status conference that, should the parties request that it enter an order setting forth a date for Sullivan-Blake to respond to the outstanding discovery requests, the Court would be more inclined to dismiss her with prejudice should she fail to respond.  Plaintiffs' counsel was thus on notice of the potential for such an outcome.

already taken place, the Court has conditionally certified a collective, notice has been issued, and the opt-in period has closed. As such, Plaintiffs' request to allow Sullivan-Blake to be dismissed as a named plaintiff but to proceed as an opt-in comes well after the deadline for plaintiffs to opt in to this action has passed. Given the above-described failure of Sullivan-Blake to participate in this litigation that has already advanced to the present procedural posture, the Court finds that dismissal with prejudice is appropriate as it concerns Sullivan-Blake.

With respect to FedEx's request that the Court strike Sullivan-Blake's Affidavit, the Court sees no practical basis for the striking of Sullivan-Blake's Affidavit at this time. The Court has no intention of revisiting conditional certification at this juncture (and FedEx has not cited any legal basis for the same), and Plaintiffs have represented that they will not use the affidavit of an absentee former named party for any purpose, including at the final certification/decertification stage, going forward in this litigation.[11] There is, accordingly, no harm or prejudice in allowing Sullivan-Blake's Affidavit to remain on the docket, and the Court will thus deny FedEx's request for the drastic sanction of striking the Affidavit.

With respect to FedEx's request for monetary sanctions, FedEx's Motion does not, in any earnest sense, seek monetary sanctions from Sullivan-Blake herself, who FedEx asserts may have an unstable housing situation at the moment.[12] Reply 7, ECF No. 243. "Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so." *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). The Court finds that FedEx has not established that Plaintiffs' counsel either violated a discovery order or

---

[11] Following representative discovery in the manner discussed above, the Court will address all arguments and evidence respecting the issue of whether the members of the collective are, in fact, similarly situated. To the extent that Plaintiffs attempt to rely on Sullivan-Blake's Affidavit at that stage of the litigation, FedEx may renew its Motion to Strike at that time.

[12] This assertion alone would, in any event, lead the Court to conclude that there are circumstances at issue that would render an order requiring Sullivan-Blake to pay expenses unjust.

directed Sullivan-Blake to do so. Accordingly, the Court will deny FedEx's request for monetary sanctions.

### C. FedEx's Motion to Dismiss Certain Opt-In Plaintiffs (ECF No. 220)

FedEx also moves, again pursuant to Fed. R. Civ. P. 37(b)(2)(A), for an order dismissing certain opt-in Plaintiffs from this action with prejudice based upon these opt-ins' purported failure to fully respond to the discovery requests that have already been served in this matter. Mot. 1, ECF No. 220. FedEx alternatively requests that, should this Court dismiss the relevant opt-in Plaintiffs without prejudice, that the Court sanction Plaintiffs, pursuant to Rule 37(b)(2)(C), and award reasonable expenses, including attorneys' fees, to FedEx caused by the opt-ins' failure to comply with the Court's Order compelling the opt-ins to respond to discovery. *Id.*

Plaintiffs concede, as they must, that "[t]he parties agreed that those 57 opt-ins who joined the case prior to the issuance of court-ordered notice would be subject to discovery in the form of an agreed-upon questionnaire, which included a request for certain documents." Br. in Opp'n 1, ECF No. 242; *see also* Order, ECF No. 212. Plaintiffs do not oppose dismissal without prejudice of the 22 opt-ins who have not responded in any manner to discovery in this matter. Br. in Opp'n 2, ECF No. 242. Plaintiffs assert, however, that 18 of the opt-ins whom FedEx seeks to have dismissed have submitted some (albeit incomplete) response to discovery requests, and argue that such opt-ins should not be dismissed at this time. *Id.*

Initially, for reasons similar to those discussed above with respect to Sullivan-Blake, the Court will dismiss, with prejudice, any opt-in who was subject to this Court's March 10, 2021 Order and who has provided no discovery to date. These individuals' participation in the instant litigation to date has seemingly been limited only to the filing of an opt-in consent form. The opt-ins who have not responded to discovery in any manner, like Sullivan-Blake, have not participated

in discovery and have disregarded a Court Order directing them to respond to discovery requests. This is despite the fact that the parties agreed that these opt-ins "would be subject to discovery in the form of an agreed-upon questionnaire, which included a request for certain documents," Br. in Opp'n 1, ECF No. 242, and further despite Plaintiffs' counsel's diligent and consistent efforts to "obtain discovery responses from the discovery opt-ins in this case," *id.* at 6. The Court construes these individuals' failure to respond to discovery in any way as a willful disregard of the parties' agreement and this Court's Order respecting such discovery. Further, "attorneys' fees and cost are neither appropriate nor likely to be effective in a case involving comparatively low wage employees serving in a representative capacity." *Ludwig*, 2021 WL 2223833, at *3. For these reasons, the Court finds that dismissal with prejudice of the opt-in Plaintiffs who have not responded to any discovery to date is appropriate.

Turning to individuals who have submitted, to date,[13] what the parties seem to acknowledge are incomplete responses to outstanding discovery requests, the Court is not inclined to dismiss these individuals, with or without prejudice, at this time. As noted above, dismissal, especially with prejudice, is an "extreme" sanction, and these parties' attempts to comply with discovery requirements sufficiently distinguishes them from Sullivan-Blake and the opt-ins who have simply ignored discovery.

The Court is, however, mindful that the parties reached an agreement that these opt-ins would be subject to discovery, and that the parties further reached an agreement respecting the manner and content of such discovery. Br. in Opp'n 1, ECF No. 242. This Court entered an Order compelling production consistent with that agreement. Order, ECF No. 212. Plaintiffs do not, in any material way, challenge the assertion that these individuals' responses to date are lacking, and

---

[13] This includes Felicia Magee (nee Spring), who had not submitted any discovery at the time of FedEx's Motion, but who has since submitted a completed questionnaire and intends to produce documents. Notice 1, ECF No. 256.

have stated that they will continue to work with opt-ins to produce the discovery at issue.[14]  Br. in Opp'n 3-4, ECF No. 242.  The Court acknowledges FedEx's desire for a definite deadline for production consistent with the parties' agreement and this Court's Order, but also acknowledges these opt-ins' efforts to meaningfully participate in this litigation.  Balancing these interests, the Court will afford these individuals a final opportunity to fully comply with the outstanding discovery requests.  Should they fail to do so, the Court is inclined to dismiss these individuals with prejudice for reasons materially similar to those discussed above with respect to Sullivan-Blake and those opt-ins who have ignored discovery to date.  Given the guidance set forth in this Memorandum Opinion, the parties are directed to confer at the completion of the period provided for such individuals to respond to discovery, and to file stipulations where appropriate.  Should the parties be unable to reach agreement as to whether any supplemental production is sufficient to respond to the outstanding requests, FedEx may renew its Motion to Dismiss to address such issues, though the Court expects the parties to confer in good faith and to keep in mind everything that has been addressed in this Memorandum Opinion.

The Court is not inclined, at this juncture, to dismiss any individual who was not subject to the Court's March 10, 2021 Order, which is clearly a substantial basis for the Court's findings above.  While the Court acknowledges FedEx's argument that an order compelling such individuals to respond to discovery may be unnecessary, the Court will, in an abundance of caution, order such individuals to respond to discovery within the same timeframe as those who have only partially responded.  The parties are directed to confer at the end of that period provided for discovery, and the rulings above regarding the dismissal of those collective action members who have not yet responded to discovery "provide clear guidance as to how such individuals will be

---

[14] The Court notes that ten opt-ins have further supplemented their document production since briefing closed on FedEx's Motion to Dismiss Certain Opt-In Plaintiffs.  Notice 1, ECF No. 256.

viewed by the Court, and counsel are encouraged to enter stipulations as appropriate." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A.09-85J, 2010 WL 2104639, at *11 (W.D. Pa. May 24, 2010).

For the same reasons discussed above with respect to FedEx's Motion to Dismiss Sullivan-Blake, the Court will deny FedEx's request for monetary sanctions in its Motion to Dismiss Certain Opt-In Plaintiffs.

### D. FedEx's Motion for Order Permitting [FedEx] to Communicate with Former Opt-In Plaintiffs as Potential Fact Witnesses (ECF No. 222)

The Court's Order accompanying this Memorandum Opinion will dismiss FedEx's "Motion for Order Permitting [FedEx] to Communicate with Former Opt-In Plaintiffs as Potential Fact Witnesses" as moot, as Plaintiffs do not set forth any material opposition to the Motion, *see* Resp. 1, ECF No. 252, and because FedEx asserted that its basis for filing the Motion was Plaintiff's opposition to the same. *See* Mot. 2, ECF No. 222 ("Without any basis to do so, Plaintiffs' counsel refused to agree that FedEx Ground can contact these now non-party drivers. Although FedEx Ground believes Plaintiffs have no basis on which to assert such a position, in an abundance of caution, FedEx Ground files this motion."). As Plaintiffs have formally withdrawn their opposition, FedEx's Motion is moot. FedEx may renew its Motion should Plaintiffs raise any objection to such communications in the future.

### E. Plaintiffs' Motion to Compel the Production of Witnesses for Deposition and Documents (ECF No. 248)

Plaintiffs move this Court for an order compelling the depositions of: (1) Luis Landaverde, a Senior HR Business Partner at FedEx who previously worked as a Contractor Relations Specialist for FedEx; and (2) Michael Bertucci, a Negotiator who purportedly frequently interacts

with Service Providers.  Mot. 3, ECF No. 248.  Plaintiffs further request that the Court enter an

order compelling FedEx to produce two categories of documents: (1) letters that FedEx recently

sent to Service Providers regarding this case;[15] and (2) Gross Vehicle Weight Rating ("GVWR")

information related to the vehicles the collective members have driven.  *Id.* at 2.

> Federal Rule of Civil Procedure 26 provides that:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Plaintiffs assert that, due to their employment backgrounds and roles at FedEx, Mr.

Landaverde and Mr. Bertucci "are likely to provide Plaintiffs with highly relevant information

regarding the economic realities of the relationship between FedEx and its drivers."  Mot. 3, ECF

No. 248.  FedEx argues that any testimony of these two deponents would be both irrelevant and

duplicative considering that Plaintiffs have already deposed three Rule 30(b)(6) witnesses with

respect to similar topics at this juncture.  Br. in Opp'n 9-10, ECF No. 257.

FedEx's arguments respecting these depositions primarily turn on the relevance of the

testimony of these two witnesses.  The Court is satisfied that these two witnesses may provide

testimony relevant to the joint employer inquiry, and will thus grant Plaintiffs' request that the

Court enter an order compelling each of these individuals to appear for a four-hour deposition.  *See*

---

[15] These letters seemingly include, *see* Mot. 4, ECF No. 248, and appear to be consistent with, those letters referenced in the Motions to Intervene (ECF Nos. 224; 266; 283) filed in this matter by three Service Providers, which, as noted in Footnote 1 of this Memorandum Opinion, each assert that the Motions were filed as a result of a letter, sent by FedEx to the potential intervenors in January of this year, encouraging the potential intervenors to file motions to intervene in this lawsuit.

Reply 5, ECF No. 263.  This Memorandum Opinion and the Court's Order are not intended to address any objections that may be raised during the course of such depositions.

Plaintiffs assert that the relevance of the letters sent by FedEx to Service Providers stems only from the fact that these letters identify potential witnesses, specifically Service Providers associated with the opt-ins in this case.  Mot. 5, ECF No. 248.  FedEx argues that: (1) it is not required to disclose every witness that it may know of; (2) in order to respond to Plaintiffs' request, FedEx will be required to prepare a list of the information requested, and that the same will be burdensome to produce, because some of the Service Providers have retained attorneys whose contact information must be provided along with that of the Service Providers; (3) Plaintiffs' position is inconsistent with their representation that Service Providers should not take part in this litigation; and (4) it is not proportional to allow Plaintiffs to have contact information for 6,000 Service Providers where discovery as to opt-ins will proceed on a representative basis.  Br. in Opp'n 6-8, ECF No. 257.

Under Fed. R. Civ. P. 26, a party must provide to the other party "the name and, if known, the address and telephone number of each individual likely to have discoverable information-- along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i). Given that Plaintiffs represent that they seek these letters merely for the purpose of obtaining the identities and contact information of potential witnesses, as well as the fact that FedEx has indicated that it intends to use information obtained from Service Providers at the decertification stage, *see* Br. in Opp'n 7, ECF No. 257; Br. in Supp. of Mot. for Order Permitting [FedEx] to Communicate with Former Opt-In Plaintiffs as Potential Fact Witnesses 1, ECF No. 222; Def.'s Br. (Respecting Scope of Representative Discovery) 10 n.7, ECF No. 191, and the fact that FedEx

is clearly in possession of the information at issue and is best positioned to provide contact information for the counsel of any Service Provider who is now represented by an attorney, the Court is inclined to grant Plaintiffs' request for this information in part. Because the letters themselves would be voluminous, *see* Scott Decl. ¶ 14, ECF No. 257-3, and because the letters are sought merely for the contact information of these Service Providers, *see* Mot. 5, ECF No. 248, the Court's Order will direct FedEx to provide to Plaintiffs a list of the Service Providers, or their counsel where it is known that any of these Service Providers are now represented by counsel, to whom it has sent the letters at issue.

Plaintiffs assert that the GVWR information it seeks is relevant in this action because FedEx has set forth argument that at least some of the collective members are exempt under the Motor Carrier Act Exemption from the FLSA's overtime protection.[16] Mot. 6, ECF No. 248. Plaintiffs assert that FedEx has information relevant to the weight of the vehicles driven by collective members, and that, because FedEx has asserted an exemption defense, it should be

---

[16] Plaintiffs assert that FedEx's argument relies on an assertion that members of the collective are not eligible for overtime "because they did not drive trucks weighing less than 10,001 pounds during the statutory period." Mot. 1, ECF No. 248. With respect to the Motor Carrier Act Exemption, the United States Court of Appeals for the Third Circuit has explained:

> Section 7 of the Fair Labor Standards Act provides that employers must pay hourly employees 150% their typical wages on hours they work in a week over 40. *See* 29 U.S.C. § 207; *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir.2005). One exemption to this general rule is Section 13(b)(1) of the Act. Known as the Motor Carrier Act Exemption, the provision provides that overtime pay is not required for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." *See* 29 U.S.C. § 213(b)(1); *see also* 49 U.S.C. §§ 31502(b), 13102 (defining scope of Secretary of Transportation's regulatory authority).

> Congress elaborated upon the Motor Carrier Act Exemption with the enactment of the Corrections Act of 2008. Section 306(a) of the Corrections Act provides that "Section 7 of the Fair Labor Standards Act ... shall apply to a covered employee notwithstanding section 13(b)(1) of that Act." *See* Corrections Act, § 306(a). Section 306(c) of the Corrections Act defines the term "covered employee." In short, a "covered employee" is an employee of a motor carrier whose job, "in whole or in part," affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous materials or large numbers of passengers. Corrections Act § 306(c).

*McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169 (3d Cir. 2015) (footnote omitted).

required to produce such information. *Id*. FedEx argues that: (1) the light vehicle issue is premature; (2) Plaintiffs' position that they should receive GVWR information from FedEx as to all 30,000 opt-ins is inconsistent with their assertion that only 500 opt-ins should be subject to representative discovery, and that the same is not proportional or reciprocal; (3) Plaintiffs' motive in seeking GVWR information is to "clean up the collective" by removing those individuals who did not drive light trucks, and that the same is improper; and (4) production of GVWR information would be immensely burdensome and disproportionate to the needs of the case. Br. in Opp'n 2-6, ECF No. 257.

      With respect to relevance, while each party advances argument as to which party bears the ultimate burden of establishing whether the Motor Carrier Act Exemption does or does not apply, this issue does not need to be resolved at this stage of the proceedings. Even if FedEx is correct that Plaintiffs must establish that they were "covered employees," the GVWR information that FedEx seeks to withhold respecting the weight of vehicles driven by collective members would, undoubtedly, be materially relevant to that issue. Accordingly, the Court finds that the GVWR information is, quite clearly, relevant in this action.

      With respect to FedEx's argument that the issue of, and information regarding, vehicle weight is premature, the same is belied by FedEx's briefing submitted in support of its own discovery Motions. *See* Br. in Supp. of Mot. for Order Permitting [FedEx] to Communicate with Former Opt-In Plaintiffs as Potential Fact Witnesses 1, ECF No. 222 ("Although approximately 30,000 Service Provider drivers *swore under penalty of perjury that they drove light vehicles* and were not paid overtime, evidence continues to emerge that many drivers have falsely sworn to either one or both of those facts. FedEx Ground is entitled to have this information on the record— both to call into question the reliability of all of the forms being used as evidence (as Plaintiffs

continue to tout all of them as true and actual evidence of the facts stated in the forms until evidence comes to light otherwise, and even in some cases, after), *and to show that substantial similarity does not and cannot exist among the drivers*." (emphasis added)); *see also* Def.'s Br. (Respecting Scope of Representative Discovery) 10 n.7, ECF No. 191 ("That vehicle weight varies so much among opt[-]ins presents a particular bar to final certification").

The question thus turns to proportionality to the needs of the case and the burden to FedEx associated with the production of the GVWR information at issue. FedEx does not dispute that it has access to the GVWR information, and FedEx is clearly the party with access to more resources in this FLSA collective action. Further, FedEx is a single source for this information, as opposed to Plaintiffs' counsel being required to reach out to each of the individual collective members, who are further unlikely to be able to produce information in a format comparable to what FedEx can produce. FedEx does not argue that the GVWR information at issue would not prove important and/or beneficial to Plaintiffs in the instant action, and the benefit and/or importance is especially clear here, where FedEx has represented that it intends to use such information to argue against final certification. The Court also recognizes, however, that this is a very large collective action, that the parties have each argued for representative discovery of less than all 30,000 opt-ins, and that Plaintiffs' request, namely information respecting every vehicle ever driven by all 30,000 of the collective members during the timeframe relevant in this case, is very broad. FedEx has also introduced evidence and argument that it will be immensely burdensome to produce such information as to all 30,000 opt-ins, and has asserted that Plaintiffs cannot simply be granted access to FedEx's databases. *See* Br in Opp'n 4-5, ECF No. 257; *see also* ECF No. 257-1; ECF No. 257-2.

In light of the above analysis respecting the relevance of the GVWR information at issue and the burden associated with its production, the Court will, at this time, enter an order compelling the production of: (1) any GVWR information that FedEx has already accessed and/or generated with respect to any named-Plaintiff and/or opt-in Plaintiff; (2) GVWR information for all opt-ins who are chosen to participate in representative discovery, as discussed above;[17] (3) any GVWR information that FedEx accesses and/or generates with respect to any named-Plaintiff or opt-in Plaintiff going forward in this case; and (4) GVWR information for an additional 1,000 opt-ins, to be chosen by Plaintiffs.  This issue may be revisited, if warranted and appropriate, as representative discovery proceeds in this matter.

## IV.    Conclusion

For the reasons discussed above, the Court will grant and deny, in the manner described above, the relief requested in the discovery Motions at issue in this Memorandum Opinion.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 12, 2021
cc/ecf: All counsel of record

---

[17] FedEx has already stated that it would provide such GVWR information to Plaintiffs following the Court's decision as to the scope of representative discovery.  Br in Opp'n 6, ECF No. 257.