IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORACE CLAIBORNE, SONJIA MONIQUE BOWLIN, TYSHAWN WALKER, DEZRAE KAUHANE, WILLIE SEALS, FREDERICK EPPICH, JEROME SCHOOLFIELD, KRISTINA TRAVIS, JEREMY WINKELS, DANIEL FORRESTER, MARK DAVID GRIFFETH, DOUGLAS RUSSELL, KENNETH BURTON, GERALD GENSOLI, and THOMAS DEPPIESSE, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:18-cv-01698-RJC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FEDEX GROUND PACKAGE SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are three Motions to Intervene filed by Ryan Systems, Inc. ("RSI") (ECF No. 224), TABE Trucking Inc. ("TTI") (ECF No. 266), and Cauble Enterprises, Inc. ("CEI") (ECF No. 283).[1] The present case is a hybrid collective action brought under the Fair Labor Standards Act ("FLSA") and Rule 23 class action brought under the laws of fourteen states by the named

---

[1] The Court shall refer to the Motions to Intervene at issue, which turn on substantively identical arguments, collectively as the "Motions to Intervene." The Court shall refer to RSI, TTI, and CEI collectively as the "Proposed Intervenors."

1

Plaintiffs on behalf of themselves and other similarly situated individuals (collectively, "Plaintiffs") against Defendant FedEx Ground Package System, Inc. ("FedEx").[2] The Proposed Intervenors have each separately moved, pursuant to Federal Rule of Civil Procedure 24(a) and 24(b), to intervene in this action in order to request that the Court strike the notices of consent of, and dismiss with prejudice, certain Opt-In Plaintiffs ("Opt-Ins") who, in the Proposed Intervenors' estimation, do not meet the definition of the putative class. *See* ECF Nos. 224; 266; 283.

In the relevant briefing, the Proposed Intervenors make substantively (and, in most instances, completely) identical arguments in support of their respective Motions to Intervene. Specifically, each of the Proposed Intervenors asserts, respectively, that it was the direct employer of certain Opt-Ins, and further asserts that such Opt-Ins did not drive a vehicle weighing 10,000 pounds or less during any workweek in which those Opt-Ins worked over 40 hours. ECF Nos. 224; 266; 283. The Proposed Intervenors argue that they have better access to relevant records pertaining to the Opt-Ins at issue than FedEx, and further argue that the Proposed Intervenors are, respectively, better suited to present a Motor Carrier Act exemption defense to this Court than FedEx. *Id*. The Proposed Intervenors also assert that each Proposed Intervenor has a substantial interest in the instant matter because FedEx has threatened each Proposed Intervenor with a lawsuit for indemnity if the Proposed Intervenors did not move to intervene in this case. *Id*. Plaintiffs

---

[2] The Court notes that, on August 12, 2021, it permitted the filing of an Amended Complaint (ECF No. 297), which added Rule 23 class action claims under the laws of fourteen states to this action. *See* ECF Nos. 295 and 296. The Motions to Intervene were filed before the filing of the Amended Complaint. As explained in the Court's August 12, 2021 Memorandum Opinion (ECF No. 295), the new state law claims largely, and essentially entirely, turn on the same facts as the original FLSA claim. Neither the parties nor the Proposed Intervenors have filed anything on the docket indicating a belief that the filing of the Amended Complaint impacts the relief sought by way of the Motions to Intervene in any way. In light of the same, the Court presumes that the parties and the Proposed Intervenors perceive that the filing of the Amended Complaint does not, in fact, impact the relief sought by way of the Motions to Intervene, and the Court will further, in the interest of efficiency, rely on its previous description of the factual background of this case, which relied on the allegations set forth in the original Complaint. The Court also notes that former Named Plaintiff Angel Sullivan-Blake, who is referenced in the Court's description of the factual background of this matter, has been dismissed with prejudice from this action. *See* ECF No. 294.

oppose the Motions to Intervene, and FedEx does not oppose the Motions to Intervene. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. The Motions to Intervene have been fully briefed and are ripe for disposition.

I.    **Factual Background & Procedural History**

This Court set forth the relevant factual background, and some of the relevant procedural history, of this case in its May 21, 2020 Opinion (ECF No. 156) denying FedEx's Motion to Disqualify Plaintiffs' Counsel (ECF No. 139), and will borrow the same for purposes of the present Memorandum Opinion. Plaintiffs assert that they were employed by FedEx through intermediary employers[3] to perform delivery services on FedEx's behalf. Compl. 1, ECF No. 1. Plaintiffs further assert that FedEx has violated the FLSA by not paying overtime compensation to Plaintiffs for all hours worked over forty each week. *Id.*

This case was reassigned from the Honorable Patricia L. Dodge to the undersigned on February 4, 2020. Order, ECF No. 137. In her September 30, 2019 Memorandum Opinion (ECF No. 106) granting Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the FLSA, Judge Dodge set forth the following comprehensive factual background for this case:

   A.    *FedEx Operations and Business Model*

   FedEx, a Delaware Corporation with its principal place of business in Coraopolis, Pennsylvania, operates a nationwide package pickup and delivery business. (ECF No. 1 ¶¶ 4, 7). FedEx contracts with thousands of small businesses whose employees carry out the physical pickup and delivery of packages. (ECF No. 29 at 1). Since long before 2014, FedEx has contracted only with incorporated businesses for delivery services, and does not employ any drivers for such services. (ECF No. 29-2 ¶ 10). FedEx's Form 10-K for the fiscal year ending May 31, 2016 "10K") reflects that FedEx "is involved in numerous lawsuits . . . where the

---

[3] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record. The distinction between ISPs and CSPs is not relevant to this Court's consideration of the Motions at issue in this Memorandum Opinion. For ease of reference, this Court will refer to ISPs and CSPs collectively as "Service Providers," and any reference to "ISPs" or "CSPs" in language quoted by this Court in this Memorandum Opinion may be inferred to be a reference to Service Providers generally. The Proposed Intervenors refer to themselves as Service Providers in their briefing.

3

classification of its independent contractors is at issue." (ECF No. 11-3 at 3). These lawsuits involve a contractor model which FedEx has not operated since 2011. (*Id.*).

### B.      The ISP Model

In 2010, FedEx began transitioning into a new negotiated agreement under which FedEx's contractors are known as Independent Service Providers ("ISPs"). (ECF No. 29 at 1). According to its 10-K, FedEx expects transition to the ISP model to be completed nationwide by 2020. (ECF No. 11-3 at 3). Under this model, FedEx contracts with ISPs, i.e., independent corporations with vehicles, drivers, and other employed personnel, that provide pickup and delivery services for FedEx. (ECF No. 29-2 ¶¶ 4, 5). According to FedEx, the ISPs:

1)    Ensure that all of their drivers are treated as employees of the ISP (*id.* ¶ 14);

2)    Agree to comply with all federal, state, and local employment laws (*id.*);

3)    Retain "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, compensation, benefits, and all other terms and conditions of employment" of their employees. (*Id.* ¶ 15).

### C.      Plaintiffs' Allegations

According to the Complaint, Plaintiff Sullivan-Blake is a resident of Texas and worked as a delivery driver for FedEx through an ISP from approximately November 2015 through October 2018. (ECF No. 1 ¶ 3). Plaintiff Claiborne resides in North Carolina and has worked as a delivery driver for FedEx through ISPs since approximately 2011. (*Id.* ¶ 4). Both Plaintiffs allege that they were eligible for overtime compensation under the FLSA but did not receive it. (*Id.* ¶¶ 3, 4).

Plaintiffs have included their affidavits in support of the Motion. In her affidavit, Plaintiff Sullivan-Blake avers that she has worked full-time as a delivery driver out of three different FedEx terminals, all located in Texas, primarily using a van that was under 10,000 pounds. (ECF No. 11-1 ¶¶ 3-5). When she first started working for FedEx in November of 2015, FedEx paid her by the hour and she received overtime when she worked over forty hours a week (*Id.* ¶ 7). At the time, she was told by a FedEx manager that she was being paid by FedEx and that ISPs do not pay drivers by the hour. (*Id.* ¶ 9). Starting sometime in January of 2016, however, FedEx required her to be paid by an ISP. (*Id.* ¶ 7). Plaintiff Sullivan-Blake claims that in order to keep her job she was required to be paid through an ISP that compensated her at a flat daily rate regardless of how many hours she

> worked, even though she frequently worked more than forty hours a week. (*Id.*). She also asserts that after she started to be paid by an ISP for her FedEx delivery work, she continued reporting to work each morning and delivering packages for FedEx following the same mandatory delivery procedures established by FedEx and that nothing about her job changed. (*Id.* ¶ 13).
>
> Plaintiff Claiborne's affidavit reflects that he too has worked as a full-time delivery driver out of three different FedEx terminals, one located in Virginia and the other two in North Carolina, using trucks that weighed less than 10,001 pounds. (ECF No. 11-2 ¶¶ 2, 11, 13). During his work at all three terminals, he has been paid through an ISP. (*Id.* ¶¶ 2, 14). Plaintiff Claiborne alleges that he has never been paid any overtime even though he has regularly worked more than 40 hours each week during his employment. (*Id.* ¶ 17).
>
> Based on their personal observations, Plaintiffs aver that all of the delivery drivers who worked alongside them were required to work under various ISPs. (ECF Nos. 11-1 ¶ 8; 11-2 ¶ 6, 18). According to their affidavits, all of the delivery drivers to whom Plaintiffs spoke told them that they do not get paid overtime for their work. (ECF Nos. 11-1 ¶ 11, 12, 26; 11-2 ¶ 19). Plaintiffs also allege that despite working for different ISPs, delivery drivers, including themselves, wore the same FedEx uniform, drove delivery vehicles with FedEx logos, and used special FedEx scanners for tracking packages. (ECF Nos. 11-1 ¶¶ 15, 16, 20; 11-2 ¶¶ 7, 8). In her affidavit, Plaintiff Sullivan-Blake notes that each morning when she reported to work, package handlers employed by FedEx had already separated the packages that each delivery driver was assigned to deliver that day. (ECF Nos. 11-1 ¶ 18). If a package assigned to a delivery driver was missing, that driver would have to wait for a FedEx manager to either track the missing package, or give permission to leave without the missing package. (*Id.* ¶¶ 20, 21).
>
> Plaintiffs assert that customer comments or complaints about their work were directed to FedEx, as opposed to their ISPs. (ECF Nos. 11-1 ¶ 24; 11-2 ¶ 10). Plaintiffs' affidavits also reflect that during their time as drivers, they never delivered packages for another company as they did not have time to do so. (ECF Nos. 11-1 ¶ 17; 11-2 ¶ 16). In any event, they could not carry packages for anyone other than FedEx while on their FedEx delivery routes. (ECF No. 11-1 ¶ 17).

Sept. 30, 2019 Mem. Op. 2-4, ECF No. 106 (footnote omitted).

On October 8, 2019, Judge Dodge entered an Order conditionally certifying the following nationwide (excluding Massachusetts) collective:

> All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) or a contracted service provider (CSP) since November 27, 2015, who operated a vehicle weighing less than 10,001

pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week.

Order, ECF No. 109.

On January 31, 2020, Judge Dodge entered a Memorandum Opinion (ECF No. 133) and Order (ECF No. 134) denying FedEx's "Rule 19(a) Motion to Join Pennsylvania Service Providers as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties" (ECF No. 114). In its Rule 19 Motion, FedEx sought joinder of Pennsylvania Servicer Providers to this action, as well as dismissal of all claims pertaining to opt-in Plaintiffs residing outside of Pennsylvania and Service Providers who employed drivers outside of Pennsylvania. Jan. 31, 2020 Mem. Op. 1, ECF No. 133. FedEx argued that Service Providers are necessary and indispensable parties in this case because they employ and pay Plaintiff drivers, set the employment and wage policies for drivers, and have a direct interest in the outcome of the case. *Id.* at 2. In her January 31, 2020 Memorandum Opinion, Judge Dodge rejected this argument in holding that Service Providers do not have a direct stake in this litigation, explaining:

> Under Rule 19(a)(1)(B)(i), "the court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 316 (3d Cir. 2007). FedEx asserts that the Service Providers are "required" parties pursuant to this provision for two reasons.
>
> First, FedEx argues that Plaintiffs' allegations implicate the Service Providers' pay practices and compensation structures. (ECF No. 115 at 7). According to FedEx, any imposition of FLSA liability in this case will compel the absentee Service Providers to change their pay practices or risk being sued by their current employees for additional FLSA violations. (ECF No. 118 at 5). Second, FedEx contends that the Service Providers have a direct interest in defending their pay practices because they have an indemnification agreement with FedEx. (ECF No. 115 at 7-8).
>
> Both of these arguments miss the mark because in order for the Service Providers to be classified as "required" parties under Rule 19(a)(1)(B)(i), FedEx must show that "some outcome of the federal case that is reasonably likely can

> preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." [*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993)]. The requirements of this provision are "not satisfied simply because a judgment against [FedEx] in this action might set a persuasive precedent in any potential future action against [the absentee Service Providers]." *Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008). At this juncture, it would be premature for this Court to determine what effect, if any, an adverse judgment against FedEx in this case may have on subsequent, yet to be filed, lawsuits against the Service Providers brought either by Plaintiffs or FedEx. Because the Service Providers do not have a direct stake in this litigation, they are not "required" parties under Rule 19(a)(l)(B).

Jan. 31, 2020 Mem. Op. 5, ECF No. 133. Judge Dodge ultimately held that Service Providers are not required parties under Fed. R. Civ. P. 19(a) because: (1) "The Court can accord complete relief among existing parties"; (2) "Service Providers do not have a direct stake in this litigation"; and (3) "[t]he absence of Service Providers would not subject FedEx to inconsistent obligations." *Id.* at 3-5.

As previously noted, this case was subsequently reassigned from Judge Dodge to the undersigned on February 4, 2020. Order, ECF No. 137. On May 21, 2020, this Court issued a Memorandum Opinion denying FedEx's Motion to Disqualify, which sought disqualification of Plaintiffs' counsel, Lichten & Liss-Riordan, P.C., on the basis that the firm's concurrent representation of both Plaintiffs and a class of Service Providers in *Carrow v. FedEx Ground Package System, Inc.*, No. 16-3026 (D.N.J.) purportedly created a concurrent conflict of interest under Pennsylvania Rule of Professional Conduct 1.7. Mem. Op. 5, ECF No. 156. In that Memorandum Opinion, the Court explained:

> As clearly explained in Judge Dodge's January 31, 2020 Memorandum Opinion, Plaintiffs need only prove that they were not properly compensated pursuant to the FLSA and that FedEx is a joint employer pursuant to the FLSA to fully recover in this action, as joint employers may be held jointly and severally liable for violations of the FLSA. Jan. 31, 2020 Mem. Op. 3-4, ECF No. 133. While the Court acknowledges that this inquiry may inevitably involve an examination into the amount paid to Plaintiffs by Service Providers, this Court will not be required to make a judicial determination that Service Providers, who are

7

> not parties to this action, were *required* by the FLSA to pay overtime compensation to Plaintiffs.

May 21, 2020 Mem. Op. 11; 15-16, ECF No. 156.  The Court further explained:

> FedEx's own filings make clear that its right to pursue indemnification and its decision to terminate the contracts of Service Providers will rely on a determination that Service Providers have violated the law.  *See* Br. in Supp. 2, ECF No.140 ("Further, both the OA and the ISPA obligate the Service Providers to indemnify and hold FedEx Ground harmless against any liabilities arising from all claims brought against FedEx Ground *if the Service Providers fail to comply with any laws applicable* to its business, including the federal and state wage and hour laws." (emphasis added)); *id.* at 3 (asserting that FedEx may, if found to be liable in this action, terminate Service Providers' contracts "for violating their obligation to adhere to state and federal wage law.").  While FedEx may pursue indemnification and contract termination following the conclusion of the present action, a finding of liability on FedEx's part in no way establishes FedEx's right to recover from Service Providers.
>
> . . . [T]he factfinder in this action will not be required to make a determination as to whether Service Providers constitute joint employers and thus had an obligation under the FLSA to pay overtime compensation to the Plaintiffs.  Thus, there will be no determination in this action that Service Providers violated the FLSA.  Accordingly, in pursuing indemnification, FedEx will be required to prove its case in its entirety, including that the contracts at issue are valid and enforceable and that a right of recovery arises out of those contracts, and no holding of this Court will bind the nonparty Service Providers with respect to an FLSA violation.  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993) ("In this respect, the district court is correct.  Its conclusion that [a nonparty] would not be bound is a corollary of the general rule that issue preclusion applies only to persons who were either parties to the prior action or shared the same interest as the parties who were present in the prior action.").  Further, as discussed in the caselaw above, FedEx could be found liable in this action and also fail in its indemnification action.  This is a common and necessary consequence of joint and several liability. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).
>
> For the reasons discussed above, this Court finds that it will not be required to determine that Service Providers, who are not parties to this action, are liable for FLSA violations in order for Plaintiffs to recover.  The Court further finds that potential future indemnification suits or contract termination do not present a situation wherein LLR must directly advocate a position that is adverse to either of its clients in the present action.  Accordingly, the Court holds that FedEx has not met its burden of clearly establishing that either of these bases supports a finding of a directly adverse relationship with respect to LLR's concurrent representation of its clients.

8

*Id.* at 15-16.

As noted above, the Court has also issued a Memorandum Opinion and Order in this case granting Plaintiffs leave to file an Amended Complaint in this matter. The Amended Complaint was filed on August 24, 2021. The Court has also resolved several discovery disputes that have arisen in this matter, and the present parties are currently in the process of conducting discovery in accordance with the Court's Case Management Order (ECF No. 308).

RSI filed its Motion to Intervene (ECF No. 224), which attached a Brief in Support, on April 5, 2021. The relevant docket entries with respect to the Court's consideration of RSI's Motion are: (1) FedEx's Notice of Non-Opposition (ECF No. 229); (2) Plaintiffs' Brief in Opposition (ECF No. 246); (3) FedEx's Motion for Leave to File Brief (ECF No. 253); (4) RSI's Reply (ECF No. 255); (5) FedEx's Brief (ECF No. 264); and (6) Plaintiffs' Brief (ECF No. 271) responding to FedEx's Brief. TTI filed its Motion to Intervene (ECF No. 266) on May 27, 2021. The relevant docket entries with respect to the Court's consideration of TTI's Motion are: (1) TTI's Brief in Support (ECF No. 267); (2) Plaintiffs' Brief in Opposition (ECF No. 275); (3) FedEx's Response and Notice of Non-Opposition (ECF No. 276); and (4) TTI's Reply (ECF No. 279). CEI filed its Motion to Intervene (ECF No. 283), which attached a Brief in Support, on July 1, 2021. The relevant docket entries with respect to the Court's consideration of CEI's Motion are: (1) Plaintiffs' Brief in Opposition (ECF No. 287); and (2) FedEx's Response and Notice of Non-Opposition (ECF No. 288).

## II.     Legal Standard

With respect to intervention of right, Federal Rule of Civil Procedure 24 provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Where a litigant seeks intervention as of right under Rule 24(a)(2), the United States Court of Appeals for the Third Circuit has held that the litigant must establish:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir.1998)).  "Each of these requirements must be met to intervene as of right." *Treesdale*, 419 F.3d at 220 (quoting *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995)).

With respect to permissive intervention, Rule 24 provides, in relevant part:

> (b) Permissive Intervention.
>
>> (1) In General.  On timely motion, the court may permit anyone to intervene who:
>>
>>> (A) is given a conditional right to intervene by a federal statute; or
>>>
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.
>>
>> . . . .
>>
>> (3) Delay or Prejudice.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

10

### III.  Discussion

Initially, the Court notes that this is the second attempt to include Service Providers in this litigation,[4] and FedEx's third time arguing that a decision in this case will directly impact Service Providers.[5]  Essentially, FedEx and the Proposed Intervenors ask this Court to reconsider a determination that has twice been reached, first by Judge Dodge and then by the undersigned, in this matter as to Service Providers' potential interest (or, more accurately, lack thereof) in this ligation.  The Court will not revisit those previous determinations at this juncture, and further rejects the arguments set forth in the Motions to Intervene and relevant briefing that the Proposed Intervenors are entitled to intervene pursuant to Rule 24(a) in this matter or should otherwise be permitted to intervene in this matter pursuant to Rule 24(b).

"A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).  The United States Court of Appeals for the Third Circuit has "explained that the law of the case doctrine does not preclude a court from revisiting its own decisions or one of a coordinate court where (1) new evidence is available or (2) a supervening new law has been announced." *In re Pharmacy*, 582 F.3d at 439 (citing *Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron*, 123 F.3d 111, 117 (3d Cir. 1997)).  Further, "a trial judge has the discretion

---

[4] While the Court appreciates that these Motions to Intervene are made by the Proposed Intervenors and not FedEx, any conclusion that FedEx had no influence in the filing of the Motions to Intervene would be, at best, naive.  Each of the Proposed Intervenors cites FedEx's threats of a lawsuit for indemnity as a basis for their substantial interest in this litigation. *See* ECF Nos. 224; 266; 283.

[5] FedEx has also submitted briefing in support of the arguments set forth in the Motions to Intervene. *See* ECF Nos. 253; 264; 276; and 288.

to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* (quoting *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979)).

The Proposed Intervenors (and FedEx) fail to provide this Court a sufficient basis to revisit the Court's previous determinations with respect to Service Providers' lack of a sufficient interest in this litigation. This Court has twice determined that Service Providers do not have a direct stake in this litigation, and this Court will not casually "rethink" a decision that has already been reached on two separate occasions.[6] For the reasons discussed in Judge Dodge's January 31, 2020 Memorandum Opinion denying FedEx's "Rule 19(a) Motion to Join Pennsylvania Service Providers as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties," and further discussed in this Court's May 21, 2020 Memorandum Opinion denying FedEx's Motion to Disqualify, Service Providers do not have a sufficient interest in the present action to warrant intervention as of right under Rule 24(a). The Court notes that FedEx's threat of potentially filing actions for indemnity against individual Service Providers was raised as a basis for the relief sought by way of both FedEx's Rule 19 Motion and its disqualification motion. The Court has already held that FedEx failed to satisfy the less restrictive Rule 19 standard because Service Providers do not have a direct stake in this litigation, and this Court has held that "[w]hile FedEx may pursue indemnification and contract termination following the conclusion of the present action, a finding of liability on FedEx's part in no way establishes FedEx's right to recover from Service Providers." Mem. Op. 15, ECF No. 156. The Court finds that the Proposed

---

[6] However, the Court notes that the merits of the Proposed Intervenors' Motions to Intervene have been fully considered and, again, as expressed herein, respectfully rejected by this Court, for the same reasons previously articulated.

Intervenors fail to set forth a sufficient interest in this litigation, or that this litigation poses a threat to any such interest.

Turning to permissive intervention pursuant to Rule 24(b), the Court finds that, even if the Proposed Intervenors satisfied the requirements of Rule 24(b)(1)(B), the Motions to Intervene make clear that permitting intervention will result in undue delay of this action. Rule 24(b)(3) provides that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Each of the Proposed Intervenors asserts that it intends to file a motion to dismiss a (very) select few of the approximately 30,000 opt-in plaintiffs in this action. Such motions will clearly delay the adjudication of this matter, which has been pending for more than three years and has already involved significant motion practice in the absence of Service Providers. FedEx has, on numerous occasions, reminded the Court that the present action is, purportedly, the largest conditionally certified nationwide collective action in history, and has repeatedly argued that this case, as presently positioned without Service Providers' participation, is significantly unwieldy. The addition of three Service Providers,[7] each of whom intends to file a motion to dismiss individual opt-ins and duplicative briefing respecting the issue of decertification, will serve to make this case more complicated, convoluted, and unwieldy, and will clearly result in undue delay in this action. In light of the same, the Court declines to exercise its discretion to permit intervention under Rule 24(b).

---

[7] Though not the basis for the Court's decision, the Court also notes that permitting the intervention of these three Service Providers is likely to, at minimum, result in the filing of a number of additional motions to intervene by at least some of the other approximately 6,000 Service Providers (who may also desire to file motions to dismiss certain individual opt-ins), not to mention the likely renewal of FedEx's Motion to Disqualify Plaintiffs' counsel. The same would threaten to derail this litigation, which is slowly, but steadily, proceeding through discovery at this juncture.

13

## IV. Conclusion

For the reasons discussed above, the Court will deny the Motions to Intervene filed by RSI, TTI, and CEI. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: February 23, 2022

cc/ecf: All counsel of record